UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EDWARD WEAVER, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 1:19 CV 127 RWS |
| CORIZON, LLC, et al., | ) ) ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

Edward Weaver ("Weaver") is currently incarcerated at the Southeast Correctional Center ("SECC"), a facility operated by the Missouri Department of Corrections ("MDOC") in Charleston, Missouri. Weaver brings this suit pursuant to 42 U.S.C. § 1983, alleging constitutionally inadequate medical care for his chronic hepatitis C ("HCV"). Defendants are MDOC's healthcare services provider, Corizon, LLC; SECC Director J. Cofield; Corizon physicians Dr. Jerry Lovelace and Dr. T. Kevin Bredeman; SECC physician Dr. Philip Tippen; and SECC nurses Rozanne Andersen and Molly Lelja. Defendants move to dismiss Weaver's second amended complaint under Federal Rule of Civil Procedure 12(b)(6). I will deny the motion for the reasons explained below.

## BACKGROUND

Between 10-15% of the incarcerated population under MDOC's care is infected with chronic HCV, a virus that attacks the liver and causes hepatitis or liver inflammation. Left untreated, the virus can cause extensive fibrosis of the liver, cirrhosis, and liver cancer. Approximately 50% of individuals with chronic HCV will develop cirrhosis or liver cancer, while 70-95% will develop chronic liver disease. For approximately the past decade, medical providers have used pills known as direct-acting antivirals ("DAAs") to treat patients with chronic HCV. These medications are highly effective, boasting a 90% cure rate. As a result, in 2016, the American Association for the Study of Liver Disease ("AASLD") and the Infectious Diseases Society of America ("IDSA") issued guidelines recommending that all individuals with chronic HCV should be treated with DAAs. This is currently regarded as the medical standard of care for treating chronic HCV and is the approach endorsed by the Centers for Disease Control ("CDC").

For years, Corizon only administered DAAs to inmates whose fibrosis or cirrhosis had progressed to a certain degree, as measured by their AST to Platelet Ratio Index (APRI) scores. The APRI test compares the level of aspartate aminotransferase (AST) in an infected person's blood to both the typical amount of AST in the blood of a healthy person and the number of platelets in the infected person's blood. According to the complaint, "when an APRI score is extremely high,

2

it has good diagnostic utility in predicting severe fibrosis or cirrhosis, but low and mid-range scores miss many people who have significant fibrosis or cirrhosis." Compl. at ¶ 57. This is potentially problematic because "more than half of people with cirrhosis will not have an APRI score of at least 2.0." Compl. at ¶ 58. Additionally, an individual's APRI score is not entirely reliable because the levels of AST and alanine aminotransferase (ALT) in an individual's body regularly fluctuate. Thus, "even a series of normal readings over time may fail to accurately show the level of fibrosis or cirrhosis." Compl. at ¶ 60. Despite these issues, however, Corizon relied solely on inmates' APRI scores—which were monitored every six months—when determining eligibility for DAA treatment. Only inmates with scores exceeding 2.0 could receive the treatment (the "APRI Policy").

At some point in January 2019, Corizon apparently abandoned the APRI Policy. At that time, Dr. Lovelace, regional medical director for Corizon, implemented a different policy, "prioritizing, delaying, and denying treatment to [chronic HCV] patients based on his individual determinations" (the "Lovelace Policy"). Compl. at ¶ 73. When deciding which inmates qualified for DAA treatment, Dr. Lovelace relied on data that he kept in an Excel spreadsheet, which, according to the complaint, "was improperly created, administered without reference to prior policy, and inaccurately maintained." Compl. at ¶ 74.

3

Weaver was first diagnosed with chronic HCV in 2013 while in MDOC custody. He was placed in Corizon's Hepatitis C Chronic Care Clinic. When he returned to MDOC custody in 2017, he was re-enrolled in the clinic. In March 2018, he filed a request to receive DAA treatment. The request was denied because his APRI score was too low.[1] In September 2018, he filed a formal grievance request, which was also refused on the same grounds. Weaver appealed this denial in November 2018. The appeal was denied.

On or around May 17, 2019, Weaver suffered a "severe, multi-day [HVC] episode" that left him bedridden in the prison hospital for five days. During this episode, he experienced a variety of symptoms, including stomach pain, nausea, anorexia, fever, jaundice, and bloody urine. While in the hospital, Weaver again requested treatment with DAAs. The request was denied. Approximately a month later, on or around June 27, 2019, Dr. Tippen noted that Weaver was still experiencing some symptoms, including nausea, vomiting, and tiredness. At some point following the episode, Weaver's HCV "spontaneously cleared" and he was removed from the prison's Chronic Care Clinic. It does not appear that he is currently being monitored or treated for HCV.

---

[1] The complaint only lists Weaver's APRI score from April 2013; at that time, it was 1.605.

4

Weaver contends that the refusal to treat him with DAAs before May 2019 amounted to deliberate indifference to his medical needs, in violation of the Eighth Amendment. Because his HCV has "spontaneously cleared," he does not seek injunctive relief in the form of DAA treatment. Rather, he requests damages in an unspecified amount.

## LEGAL STANDARD

In ruling on a motion to dismiss under Rule 12(b)(6), I must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. Hager v. Ark. Dep't of Health, 735 F.3d 1009, 1013 (8th Cir. 2013). The federal rules require only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a plaintiff need not provide "detailed factual allegations" but must provide "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## ANALYSIS

Prisoners' claims of constitutionally inadequate medical treatment are evaluated under the deliberate indifference standard set forth in Estelle v. Gamble, 429 U.S. 97, 106 (1976). A plaintiff bringing such a claim must show (1) that he had an objectively serious medical need, and (2) prison officials were aware of and

5

disregarded that need. Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997) (citations omitted).

### 1. Serious Medical Need

Serious medical need is defined as "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Id. (citation omitted). The Eighth Circuit has previously addressed the question of when chronic HCV constitutes a serious medical need, explaining that "though an HCV infection is unquestionably a serious medical problem, the Eighth Amendment issue is not whether the infection itself is a 'serious medical need,' but rather whether [the inmate] had a serious medical need for prompt…treatment." Bender v. Regier, 385 F.3d 1133, 1137 (8th Cir. 2004).

Defendants maintain that Weaver has not alleged that he had a serious medical need for DAA therapy. In support, they cite Bender and several district court cases involving claims for DAA treatment in other prisons. See Marshall v. LeBlanc, 2019 WL 2090844, at *3 (E.D. La. Mar. 6, 2019), adopted by 2019 WL 2088557 (E.D. La. May 13, 2019) (plaintiff did not allege a serious medical need for DAA therapy because he "received ongoing medical monitoring and testing for his condition" and medical providers "determined that…antiviral treatment is not medically necessary at this time"); Stevens v. Hutchinson, 2017 WL 9605115, at *7 (W.D. Mich. Dec. 6,

2017), adopted as modified, 2018 WL 1557251 (W.D. Mich. Mar. 30, 2018) (noting that "[i]t is well-established that not all cases of Hepatitis C require treatment" and granting defendants' motion for summary judgment because the plaintiff "failed to present verifying medical evidence showing that his condition required treatment at any time before he received it"). They also argue that because Weaver's HCV "spontaneously cleared" following his May 2019 episode, that demonstrates that he "cannot plausibly allege a serious medical need for DAA therapy at any time before his infection resolved itself."

In support of his argument that he has adequately alleged a serious medical need for DAA treatment, Weaver points to Postawko v. Mo. Dep't of Corr., 2017 WL 1968317 (W.D. Mo. May 11, 2017), a class action suit that challenged Corizon's APRI Policy and led to a settlement agreement under which Corizon agreed to begin providing DAA therapy "for the highest priority inmates, i.e. the sickest and those most in need of immediate treatment, by the end of June 2021." [ECF No. 69]. At the motion to dismiss stage, the court found that the plaintiffs had plausibly alleged a serious medical need for DAA treatment. The plaintiffs alleged that HCV, when left untreated, can lead to various severe health problems; that DAA treatment is highly effective and delay in receiving DAAs increases an individual's chances of developing other health conditions; and that they suffered "individual complications from their chronic HCV infections." Postawko, 2017 WL 1968317, at *5. Weaver

7

has made similar detailed allegations about the efficacy of DAAs and the complications that can result if chronic HCV is left untreated. Defendants contend that the putative class in Postawko "included inmates who alleged more than [Weaver] does here—that he possessed an HCV diagnosis and did not receive immediate DAA therapy." This is not an accurate description of the facts described in the complaint. While the complaint does not describe specific symptoms that Weaver may have suffered as a result of his HCV prior to May 2019 and acknowledges that his HCV has since "spontaneously cleared," it states generally that he "suffered unnecessary pain, suffering, and injury" as a result of his failure to receive DAA treatment and describes his May 2019 flare-up in detail.

"Whether an inmate's condition is a serious medical need and whether an official was deliberately indifferent to the inmate's serious medical need are questions of fact." Schaub v. VonWald, 638 F.3d 905, 915 (8th Cir. 2011) (citation omitted). Discovery may reveal that Weaver's HCV was not advanced enough to require treatment with DAAs before he suffered his flare-up, but the facts he has alleged in the complaint are sufficient to survive the motion to dismiss.

2. Deliberate Indifference

A plaintiff cannot establish deliberate indifference to a serious medical need by merely alleging that he did not "receive a particular or requested course of treatment." Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997). He also

8

cannot establish deliberate indifference by alleging that officials acted negligently or committed medical malpractice. Estelle, 429 U.S. at 106. Rather, deliberate indifference is "equivalent to criminal law recklessness, which is 'more blameworthy than negligence,' yet less blameworthy than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate." Schaub, 638 F.3d at 914-15 (citation omitted).

Some courts have held that delaying DAA treatment does not constitute an Eighth Amendment violation. See, e.g., Hoffer v. Sec'y, Fla. Dep't of Corr., 973 F.3d 1263, 1273 (11th Cir. 2020) (explaining that prison's policy of administering DAAs based on progression of fibrosis—not measured by APRI scores—does not violate the Eighth Amendment "[b]ecause the plaintiffs…are receiving medical care…and because the adequacy of that care is the subject of genuine, good faith disagreement between healthcare professionals"); Atkins v. Parker, 972 F.3d 734, 738 (6th Cir. 2020), cert. denied, 2021 WL 1520798 (Apr. 19, 2021) (affirming district court's judgment that prison's policy of administering DAAs, which "was designed to provide care to the sickest patients first," did not violate the Eighth Amendment, even accepting the plaintiff's argument that the "best practice" would have been to treat all inmates with DAAs); see also Buffkin v. Hooks, 2019 WL 1282785, at *6 (M.D.N.C. Mar. 20, 2019) (denying plaintiffs' motion for a preliminary injunction for universal DAA treatment because "the choice between

9

competing treatment options is 'a matter for medical judgment' that does not constitute deliberate indifference," and noting that the AASLD/IDSA guidance "provides some evidence of a preferred public health policy but does not necessarily constitute the standard for judging deliberate indifference") (citation omitted). Other courts have disagreed. See Stafford v. Carter, 2018 WL 4361639, at *13, *16 (S.D. Ind. Sept. 13, 2018) (deciding on summary judgment that prison's policy of relying on APRI scores to determine treatment eligibility amounted to deliberate indifference because the plaintiffs "presented undisputed medical evidence…that blood draws, monitoring, and patient education do not constitute effective treatment" for HCV and "it is undisputed that there is no medical justification for dividing individuals into treatment categories based on the degree of fibrosis or the progression of their disease as determined by the APRI score"); Postawko, 2017 WL 1968317, at *7 (denying in part defendants' motion to dismiss after concluding that the plaintiffs had "plausibly alleged more than mere medical malpractice—an *inadvertent* failure to provide adequate medical care…their denied access to DAA treatment is not the result of a misdiagnosis; they have been properly diagnosed with chronic HCV, for which the medical standard of care calls for DAA drug treatment").

Weaver has correctly noted that the majority of cases involving this kind of claim have been decided on summary judgment; very few claims have been

10

dismissed without the benefit of some discovery. At this stage of the proceedings, I find that Weaver has stated a claim for deliberate indifference to a serious medical need; he has not merely expressed disagreement with a particular type of treatment, as Defendants argue. Weaver has alleged that he was enrolled in the Hepatitis C Chronic Care Clinic and that his APRI score was monitored via blood testing every six months. The complaint does not indicate that he received any other treatment under the APRI Policy. Coupled with the factual allegations about the reliability of APRI scores as a measure of fibrosis or cirrhosis, it appears that Weaver was not receiving much treatment at all until his hospitalization for the flare-up resulting from the lack of treatment beforehand.

Furthermore, Weaver has contested not only the APRI Policy but also the Lovelace Policy adopted in January 2019. The implementation of a seemingly more holistic evaluation process suggests that Defendants were perhaps *more* attentive to Weaver's condition than they were under the APRI Policy. See Atkins, 972 F.3d at 740 (describing the treating physician's approach, which "required an in-depth evaluation of every inmate infected with hepatitis C," and concluding that "[r]ather than reveal indifference…the record supports the conclusion that…[the physician] sought to employ the finite resources at his disposal to maximize their benefit for the inmates in his care"). However, the complaint does not describe the different criteria that Defendants considered when evaluating patients under the Lovelace Policy, nor

11

does it provide details about Weaver's specific health data. This is understandable, given Weaver's inability to conduct much discovery before filing suit. In the absence of any specific information about treatment under the Lovelace Policy, Weaver's argument that "no policy…[was actually] used [to replace the APRI Policy]…just a back-of-the-napkin-like list maintained by Lovelace" is a plausible allegation.

Deliberate indifference is an exacting standard, and this is a close issue. However, viewing the factual allegations in the complaint in the light most favorable to Weaver, I find that he has stated a claim for deliberate indifference to a serious medical need.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss, [58], is **DENIED**.

*[signature]*
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 19th day of April, 2021.